TREVOR J. HATFIELD, ESQ.
Nevada Bar No. 7373
**HATFIELD & ASSOCIATES, LTD.**
703 South Eighth Street
Las Vegas, Nevada 89101
(702) 388-4469 Tel.
(702) 386-9825 Fax
*thatfield@hatfieldlawassociates.com*

*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| MARK MCCOY,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF LAS VEGAS, a political subdivision of the State of Nevada,<br><br>　　　　　Defendant. | CASE NO:<br><br><br>**COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

COMES NOW, Plaintiff MARK MCCOY (hereinafter, "Plaintiff"), by and through his counsel, the law firm of Hatfield & Associates, Ltd., and alleges upon information and belief against the above-captioned Defendant as follows:

**PARTIES**

1. At all times relevant hereto, Plaintiff, residing in Las Vegas, Nevada, was and is an individual residing in the State of Nevada and was employed by Defendant.

2. At all times relevant hereto, Defendant is a municipal corporation that is a political subdivision of the State of Nevada and are Chief Administrators of Defendants.

3. The true names and capacities of DOES I through X, inclusive and ROE CORPORATIONS I through X, inclusive are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and therefore alleges that each of the Defendants designated as DOES I through X, inclusive and ROE CORPORATIONS I

1

through X, inclusive are either responsible in some manner for the events and happenings referred to herein, and/or are liable to Plaintiff for the payment of damages owing to Plaintiff as set forth herein. Plaintiff will ask leave of this Court to amend this Complaint to assert the true names, characters and capacities of DOES I through X, inclusive and ROE CORPORATIONS I through X, inclusive, when the same have been ascertained and to join such Plaintiff in this action.

4. All of the acts alleged herein and or failures alleged herein were duly performed by and or are attributable to Defendant, acting by and through their agents and employees. Said acts and or failures to act were within the scope of said agency and or employment, and Defendant ratified said acts and or omissions.

**JURISDICTION AND VENUE**

5. The jurisdiction of this Court is predicated upon 29 U.S.C. Section 301, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 relating to declaratory judgments. This Court may also exercise jurisdiction over Plaintiff's claims arising under the federal common law and the common law, case law and the statutes of the State of Nevada, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. Section 1367.

6. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. Section 1391(b), wherein Plaintiff resides, all Defendant reside and/or regularly conduct business and where all the wrongful conduct occurred.

7. Upon information and belief and at all relevant times, Defendant employed in excess of fifteen (15) employees for at least twenty (20) calendar weeks from 2014 to the present time and was further engaged in an industry directly affecting interstate commerce.

8. Plaintiff demands a jury trial of this case pursuant to Local Rule 38-1 and 28 U.S.C. Section 1411.

2

**ADMINISTRATIVE PREREQUISITES**

9. Plaintiff has complied with all the administrative prerequisites to action under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5 as follows: Plaintiff timely filed a formal charge of discrimination with the federal Equal Employment Opportunity Commission [hereinafter "EEOC"]. Plaintiff promptly and diligently accommodated all agency requests for information and fully cooperated in the agency's investigation of this matter; Plaintiff has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this civil action, and Plaintiff has received a Right to Sue letter from the EEOC prior to filing this case.

**FACTUAL ALLEGATIONS**

10. Plaintiff, a male of African-American race and National Origin, was employed by Defendant beginning in July 21, 2002, as a police Lieutenant until he was terminated on December 5, 2022.

11. On or about June 29, 2022, Plaintiff filed a complaint with Defendant's Human Resource representative, Lori Petsco, informing her that supervisors were not enforcing foot patrol on Fremont Street. He advised Ms. Petsco that he had observed this on June 15, 2022 and emailed acting Chief Kyle Ward and Lieutenant John Guillen requesting that they open an investigation about officers not being present on foot at the Fremont Street Canopy. Plaintiff also informed Ms. Petsco that he was advised on June 21, 2022, by Assistant Chief Robert Straube that he was not going to open an investigation but would send out a memorandum reminding officers about providing security on foot in that area.

12. Plaintiff also told Ms. Petsco that Assistant Chief Straube called him into his office and told him he was not ben promoted because he was spreading rumors of an affair between Chief Molina and Lieutenant Sandy Lopez, which was not true. He continued telling Plaintiff that he was

3

the next person to be promoted to Deputy Chief in his eyes. Assistant Chief Straube also asked for Plaintiff's support as he was in the process of testing for the Chief position during this time. Ms. Petsco took notes but told Plaintiff he would have to follow up with Human Resources Manager Rick Hunt, because it involved ranking members of the department.

13. On or about July 6, 2022, Plaintiff had a meeting with Mr. Hunt. He started with the mistreatment from former Chief Molina undermining his authority, disparaging his reputation, and asking him if he considered being Chief at another Department (even though the position of Deputy Chief was likely to open soon at their agency). Mr. Hunt reminded Plaintiff that Mr. Molina was no longer working with the department. Plaintiff told Mr. Hunt that he understood but the treatment was continuing under Assistant Chief Straube.

14. On or about July 12, 2022, Plaintiff was advised that Sgt. Marcus Diaz was planning on filing a complaint against him. Plaintiff was also informed that there was a "Vote of No Confidence" petition being circulated in the locker room amongst officers. He emailed Mr. Hunt about the petition.

15. On or about August 11, 2022, Plaintiff was informed by his boss, Acting Chief Kyle Ward, via telephone that a new car would be assigned to him. On or about August 15, 2022, Mr. Ward told Plaintiff that the car would no longer be assigned to him, and that Assistant Chief Straube was assigning the vehicle to a Deputy Chief who works under a different Organization ID number in the budget.

16. On or about October 5, 2022, Plaintiff was informed by Mr. Hunt that the investigation was over, and he was informed the results of his complaints were not sustained. The next day, Plaintiff emailed Mr. Hunt requesting a copy of the investigation and that his complaint be reopened, but Mr. Hunt denied both of Plaintiff's requests.

///

4

17. On or about December 1, 2022, Plaintiff had a meeting with Mr. Ward, Human Resources Manager Vince Zamora, and Chief Potts. Plaintiff was informed that Chief Potts "no longer had confidence in him and had to let him go." Mr. Zamora told Plaintiff that he had twenty-four (24) hours to decide if he wanted to resign in lieu of termination. Plaintiff was informed that he would receive all the benefits afforded to him as a retiree if he resigned. Plaintiff was also told that they would also consider giving him ninety (90) days severance if he resigned and signed a standard form stating that he would not sue the city. The parties negotiated but were unable to reach an agreement. Plaintiff eventually declined their offer of ninety (90) days' severance. Mr. Zamora proceeded with Plaintiff's discharge. On May 23, 2023, Plaintiff received a Dismissal Letter.

18. Plaintiff competently performed his duties at all times while employed by Defendant. Plaintiff nevertheless was terminated for no actual reason other than that Chief Potts "no longer had confidence in him and had to let him go." In fact, Plaintiff never engaged in any inappropriate conduct, including but not limited to spreading rumors of an affair between Chief Molina and Lieutenant Sandy Lopez, which accusation was false.

19. Plaintiff encountered disparate treatment and retaliatory conduct while employed by Defendant including being denied a promotion due to false accusations. And being denied the use of a new car. Plaintiff repeatedly complained to Defendant verbally and in writing without resolution.

20. Plaintiff therefore was terminated for Defendant's failure or refusal to rectify Plaintiff's verbal and written complaints regarding harassment and hostility toward him, due to his race, African-American, in violation of Title VII of the Civil Rights Act of 1964, as amended, and retaliation, for engaging in a protected activity for reporting harassment and hostility toward him due to his race in violation of Title VII.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Discrimination Under State and Federal Anti-Discrimination Statutes in Violation of Title VII: National Origin, Race, Color and Sex)

21. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

22. Defendant's conduct as detailed herein, was in fact illegal. Plaintiff was subjected to discriminatory practices motivated by Plaintiff's race which are illegal activities as directed, ratified and tolerated by his former employer.

23. As a result of Defendant's above-stated actions, Plaintiff suffered irreparable injuries and deprivation of income in the form of wages and prospective benefits, promotion opportunities and job assignments due to him as an employee, and emotional pain and suffering, mental anguish, humiliation, embarrassment, indignity, and other intangible injuries in an amount to be proven at trial.

24. Plaintiff should be awarded punitive damages as well because of Defendant's extreme and outrageous conduct.

25. As a further result of Defendant's above-stated actions, it has been necessary for Plaintiff to obtain the services of the law offices of Hatfield & Associates, Ltd., to prosecute this action, and Plaintiff is entitled to reimbursement for those attorney's fees and costs which have been reasonably incurred.

### SECOND CAUSE OF ACTION

### Violation of Nevada Statutory Protections

26. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

27. NRS § 613.330 makes it unlawful for an employer to discriminate against any employee because of their age, national origin or sex. Defendant's conduct as detailed herein, was in fact illegal. Plaintiff was subjected to race related and motivated discriminatory practices, comments, and actions all of which are illegal activities as directed, ratified tolerated by his employer and Plaintiff was discriminated against due to his race.

28. As a direct and proximate result of Defendant's violation of Nevada law, Plaintiff suffered lost wages, lost benefits, lost seniority, lost future earnings, lost employment opportunities, humiliation, embarrassment, and loss of self-esteem in an amount to be determined at trial. Therefore, Plaintiff seeks all legal and equitable remedies available at law.

29. Plaintiff should be awarded punitive damages as well because of Defendant's extreme and outrageous conduct.

31. As a further result of Defendant's above-stated actions, it has been necessary for Plaintiffs to obtain the services of the law offices of Hatfield & Associates, Ltd., to prosecute this action, and Plaintiffs are entitled to reimbursement for those attorney's fees and costs which have been reasonably incurred.

### THIRD CAUSE OF ACTION

**Retaliation**

32. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

33. Defendant's conduct as detailed herein was in fact illegal. Plaintiff was subjected to discriminatory conduct and disparate treatment, all of which are illegal activities as directed, ratified and tolerated by his employer. Plaintiff was constructively discharged in retaliation by Defendant for complaining to Defendant about Defendant's employees' harassing conduct directed towards Plaintiff.

34. As a result of Defendant's above-stated actions, Plaintiff has suffered irreparable injuries and deprivation of income in the form of wages and prospective benefits, promotion opportunities and job assignments due to them as employees, and emotional pain and suffering, mental anguish, humiliation, embarrassment, indignity and other intangible injuries in an amount to be proven at trial.

35. Plaintiff should be awarded punitive damages as well because of Defendant's extreme and outrageous conduct and retaliation.

36. As a further result of Defendant's above-stated actions, it has been necessary for Plaintiff to obtain services of the law offices of Hatfield & Associates, Ltd. to prosecute this action, and Plaintiff is entitled to reimbursement for those attorney fees and costs which have been reasonably incurred.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF NRS 289 *ET SEQ*. – RIGHTS OF A PEACE OFFICER.**

37. Plaintiff realleges and reincorporates each allegation set forth above.

38. At all times material hereto, Plaintiff was employed by Defendant as an "peace officer" within the meaning of NRS 289.010 and NRS 289.150(2).

39. This claim arises from Defendant's violation of NRS 289 *et seq*., for use of punitive action against a peace officer, Plaintiff, for Plaintiff's choice to exercise his rights under any internal administrative grievance procedure, Plaintiff's reporting of harassment and retaliation. Plaintiff was terminated as a "punitive action" pursuant to NRS 289.101(4) in violation of NRS 289.020.

40. Plaintiff seeks all available damages including but not limited to compensatory damages, and attorney's fees and costs in excess of $75,000.00.

///

**FIFTH CAUSE OF ACTION**

**Wrongful Termination in Violation of Public Policy**

41. Plaintiff realleges and reincorporates each allegation set forth above.

42. Plaintiff was engaging in conduct which public policy favors, in that he requested an investigation into the retaliation and harassment he was suffering at work - which is either recognized by Nevada law as a favorable public policy or which, in good faith, Nevada law should recognize as a favorable public policy. Defendant terminated Plaintiff for reporting issues and to remediate harassment and hostility in the workplace.

43. Defendant wrongfully terminated Plaintiff in violation of public policy. Defendant knew or should have known that its termination of Plaintiff was wrongful and would cause Plaintiff damages, including emotional distress. Therefore, Defendant knew or should have known that Plaintiff's special and general damages were foreseeable and would cause Plaintiff emotional distress.

44. The harassment made toward Plaintiff was made and perpetrated with the specific motive to harass Plaintiff, and did, in fact, create a hostile, stressful, and intolerable work environment for Plaintiff.

45. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to all available damages including but not limited to compensatory damages, punitive damages, and attorney's fees and costs in excess of $75,000.00.

**REQUEST AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and damages against Defendant as follows:

1. Enter an injunction ordering Defendant to make Plaintiff whole with full back pay, benefits and reinstatement to a position he would have obtained in the absence of discrimination and breach of contract, or, in the alternative, front pay;

2. An award to Plaintiff for compensatory damages in amount to be shown at trial for past and future economic and non-economic losses within this Court's jurisdiction subject to proof;

3. An award to Plaintiff for general damages, including but not limited to emotional distress damages, within this Court's jurisdiction subject to proof;

4. An award to Plaintiff for exemplary and/or punitive damages;

5. An award to Plaintiff for reasonable attorney's fees and costs, including but not limited to expert witness fees, and as provided under state law;

6. An award to Plaintiff of interest on any awards at the highest rate allowed by law; and

7. Such other and further relief as this Court deems just and appropriate.

Dated this 19th day of January 2024.

**HATFIELD & ASSOCIATES, LTD.**

By:  /s/ *Trevor J. Hatfield*

Trevor J. Hatfield, Esq. (SBN 7373)
703 South Eighth Street
Las Vegas, Nevada 89101
(702) 388-4469 Tel.
thatfield@hatfieldlawassociates.com
*Attorney for Plaintiff*