UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MARK MCCOY,

        Plaintiff,

vs.

CITY OF LAS VEGAS,

        Defendant.

Case No.: 2:24-cv-00139-GMN-NJK

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 30), filed by Defendant City of Las Vegas. Plaintiff Mark McCoy filed a Response, (ECF No. 37), to which Defendant replied, (ECF No. 39). For the reasons discussed below, the Court GRANTS the Motion for Summary Judgment.

I.   **BACKGROUND**

This case arises from the alleged discrimination and retaliation Plaintiff faced by his employer, Defendant City of Las Vegas. (*See generally* Second Am. Compl., ECF No. 29). As part of the governmental services it provides, Defendant operates a Department of Public Safety. (Decl. of Chief Jason Potts ¶ 3, Ex. 1 to Mot. Summ. J., ECF No. 23-1).[1] Within the Department is a marshals service. (*Id.* ¶ 4). Unlike the general jurisdiction of Las Vegas Metropolitan Police Department, the marshals' jurisdiction is limited geographically and in scope. (*Id.* at ¶ 5).

---

[1] Defendant filed this renewed Motion for Summary Judgment which cites exhibits filed with its first Motion for Summary Judgment, (ECF No. 23). Defendant did not attach exhibits to its renewed motion but informs the Court that it relies upon the original exhibits. (Mot. Summ. J. 2:21–23, ECF No. 30). Because Defendant incorporates its original exhibits into its renewed Motion for Summary Judgment, the Court cites the exhibits attached to ECF No. 23 in this Order.

Plaintiff, an African American man, was employed by Defendant beginning in July 2002 and was eventually promoted to a Marshal Lieutenant before his employment was terminated in December 2022. (McCoy Dep. 6:5, 6:12–13, 10:2–5, Ex. 3 to Mot. Summ. J., ECF No. 23-3). A Marshal Lieutenant is a leadership role. (*See generally* Job Description at 2, Ex. 2 to Mot. Summ. J., ECF No. 23-2). The position requires an ability to "establish and maintain effective working relationships." (*Id.* at 5). Its competencies include professionalism and being "respectful and positive." (*Id.*).

In spring 2022, Plaintiff states he began noticing issues on the Fremont Street Experience—a local tourist attraction and pedestrian way that the marshals service has jurisdiction to patrol. (Resp. 6:7–8, ECF No. 37); (*see also* Mot. Summ. J. 3:21–22). Plaintiff observed several persons openly carrying firearms and noticed a lack of proper patrol by the marshals service. (Resp. 6:9–10). Plaintiff reported his observations to his superior officers. (McCoy Dep. 43:15–18, Ex. 3 to Mot. Summ. J.). Plaintiff also testified that the Las Vegas mayor emailed Defendant about an instance of a man with an "AR-15" on the Fremont Street Experience further escalating the matter. (*Id.* 44:19–45:2).

In June 2022, then Acting Chief Ward instructed Plaintiff and another lieutenant to do a spot check at the Fremont Street Experience to determine where the assigned marshals were. (*Id.* 45:11–20). Plaintiff and the other lieutenant could not locate the marshals. (*Id.* 45:21–23). Later, Plaintiff determined that the marshals, rather than being on the assigned foot patrol, were in vehicles near a casino on the Las Vegas Strip located miles from the Fremont Street Experience. (*Id.* 45:23–25).

Plaintiff then requested that an Internal Affairs investigation be opened. (*Id.* 46:7–20). His complaint concerned "neglect of duty" based on the unperformed foot patrols as well as lax supervision by the sergeant in charge of the patrol marshals. (*Id.*). Plaintiff believed that his superior officers initially supported the idea of an internal affairs investigation; however,

Defendant did not initiate an investigation. (*Id*. 47:11–48:15).  Plaintiff believes that no investigation was started because the Chief of Internal Investigations Robert Straube was friends with the sergeant assigned to the Fremont Street Experience and was protecting him. (*Id.*).  Instead of a conducting an official investigation, Plaintiff's superior officers decided to issue post orders for patrols on the Fremont Street Experience. (*Id.* 48:10–15).  But Plaintiff alleges a post order was never sent out. (Resp. 7:10–11).

Plaintiff then had a verbal conversation with a Human Resources employee wherein Plaintiff expressed his dissatisfaction that an internal investigation was not conducted. (McCoy Dep. 49:1–17, Ex. 3 to Mot. Summ. J.).  Afterwards, Plaintiff states that he had a discussion with then Acting Chief Ward regarding the lack of an Internal Affairs investigation. (Resp. 7:12–15).  During this conversation, Plaintiff discussed Assistant Chief Robert Straube's negative treatment of minorities and complaints regarding Straube's behavior. (*Id.*).

McCoy then went to Defendant's Human Resources Department Manager Rick Hunt. (McCoy Dep. 52:5–20, Ex. 3 to Mot. Summ. J.).  According to Plaintiff, he spoke with Hunt and detailed the issues he perceived related to the neglect of duty problem, the failure to open an internal affairs investigation, and issues he had with Assistant Chief Straube. (Resp. 10:18–11:27.).  After Plaintiff filed the complaint with Hunt, Assistant Chief Straube called Plaintiff and attempted to intimidate him into removing any mention of his name from the complaint. (McCoy Dep. 51:10–23, Ex. 3 to Mot. Summ. J.).  Plaintiff states he reported his call with Assistant Chief Straube to then Acting Chief Ward. (Resp. 8:11–14).

On July 11, 2022, Jason Potts became the new Department of Public Safety Chief. (McCoy Dep. 62:4–9, Ex. 3 to Mot. Summ. J.).  On September 22, 2022, Chief Potts informed Plaintiff that the city did not sustain the allegations in his HR complaint. (*Id.* 67:10–69:3). McCoy returned to HR on October 5, 2022, to discuss the investigation and express his dissatisfaction with it. (*Id.* 74:3–18).

      Deputy Chief Kyle Ward reviewed Plaintiff's work performance in fall 2022. (McCoy Performance Review at 2, Ex. 5 to Mot. Sum. J., ECF No. 23-5). After which, Chief Potts sent a Memorandum to Chief Public Safety Services Officer Tim Hacker recommending that Plaintiff's employment be terminated. (*See generally* Termination Recommendation, Ex. 6 to Mot. Summ. J., ECF No. 23-6). Potts recommended terminating Plaintiff for "causing consternation in the organization, question[ing] [the organization's] vision, and question[ing] [the organization's] approach to enforcement on the tourist corridor versus parks." (*Id.* at 1). Potts further recommended termination because Plaintiff called another lieutenant a liar during a staff meeting when the lieutenant was reporting about their patrol of the Fremont Street Experience. (*Id.* at 4). Defendant terminated Plaintiff's employment on December 1, 2022. (McCoy Dep. 10:2–5, Ex. 3 to Mot. Summ. J.).

      Plaintiff initiated this present lawsuit alleging claims for discrimination under Title VII and Nevada state law and retaliation under Title VII. Defendant now moves for summary judgment.

## II.    LEGAL STANDARD

      The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary

judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

Defendant moves for summary judgment on all claims alleged against it: (1) discrimination under Title VII; (2) discrimination under Nevada state law; and (3) retaliation. (*See generally* Mot. Summ. J.).

**A. Title VII and Nevada State Law Discrimination Claims**

Plaintiff brings claims for race and national origin discrimination in violation of Title VII and Nevada law NRS § 613.330.[2] (Second Am. Compl. ¶¶ 22–26, 27–31).  He alleges that

---

[2] A discrimination claim under NRS 613.330 proceeds under the same analysis as a Title VII claim. *See Stewart v. SBE Entertainment Group, LLC*, 239 F. Supp. 3d 1235, 1246 n.61 (D. Nev. 2017) (explaining that "courts

1  Defendant terminated his employment because he is African American. (*Id.* ¶ 11). While being
2  deposed, Plaintiff clarified that he only believes he was discriminated on the basis of race, and
3  not national origin. (McCoy Dep. 21:21–24).

4  Title VII prohibits employment discrimination based on any of its enumerated grounds:
5  "'race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21,
6  (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). To prevail on his claim, a plaintiff must
7  demonstrate that "(1) [he] belongs to a protected class, (2) [he] was qualified for the position in
8  question, (3) [he] was subject to an adverse employment action, and (4) similarly situated
9  individuals outside [his] protected class were treated more favorably." *Campbell v. Hawaii*
10 *Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018); *see also Stewart v. SBE Ent. Grp., LLC*,
11 239 F. Supp. 3d 1235, 1246 n.61 (D. Nev. 2017) (applying the same analysis for race
12 discrimination claims brought under Nevada law). If a plaintiff does so, the burden of
13 production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the
14 conduct. *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123–24 (9th Cir. 2000). If the
15 defendant can demonstrate such a reason, the burden shifts back to the plaintiff to show that the
16 reason offered is pretextual. *Id.* at 1124.

17 For a prima facie case, Plaintiff must offer evidence that gives rise to an inference of
18 unlawful discrimination, either through the framework set forth above in *Cambell* or with direct
19 or circumstantial evidence of discriminatory intent. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d
20 634 (9th Cir. 2003), *as amended* (Jan. 2, 2004). Plaintiff provides no evidence that similarly
21 situated individuals outside his protected class were treated more favorably. (*See generally*
22 Resp., ECF No. 37). To satisfy the fourth element, a plaintiff must identify employees outside
23 their race and who were similarly situated to them "in all material respects" but who were

---

apply the same analysis" to NRS 613.330 and Title VII claims); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005). The Court therefore considers Defendant's arguments on both discrimination claims together.

treated more favorably; they must "have similar jobs and display similar conduct." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (internal quotation marks and emphasis omitted).  Plaintiff's Response does not directly address Defendant's argument that he failed to demonstrate the fourth element, and instead simply provides the legal standard for this element. (Resp. 16:25–17:9).  The Court has reviewed the record before it and finds no evidence to support this element either through an inference of unlawful discrimination or through direct or circumstantial evidence.  The record is devoid of any example of an employee outside of Plaintiff's race, who was similarly situated to Plaintiff "in all material respects" (similar job and displayed similar conduct) but was treated more favorably.  Accordingly, Plaintiff fails to submit evidence to establish his prima facie case and Defendant negates an essential element of Plaintiff's discrimination claims.  Because Plaintiff's initial burden was not met, the Court need not analyze this claim further. *Chuang v. Univ. of Cal. Davis*, 225 F.3d at 1123–24.  Thus, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII and Nevada state law discrimination claims is GRANTED.

### B. Retaliation

Defendant also moves for summary judgment on Plaintiff's Title VII retaliation claim. (Mot. Summ. J. 14:21).  To establish a prima facie case of retaliation under Title VII, a plaintiff must prove that (1) they engaged in a protected activity, (2) their employer subjected them to adverse employment action, and (3) there was a causal link between the protected activity and the employer's action. *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997).  If the employee establishes a prima facie case, "the burden shifts to the employer to present legitimate, non-discriminatory reasons for the adverse employment action." *Nagar v. Found. Health Sys., Inc.*, 57 F. App'x 304, 306 (9th Cir. 2003).  "Once the employer meets this burden, the plaintiff must demonstrate a genuine issue of material fact as to whether the reason

advanced by the employer was a pretext for retaliation." *Id.* "Only then does the case proceed beyond summary judgment." *Id.*

As for the first element, "[a]n employee engages in protected activity when [he] opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Westendorf v. West Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013). An employee does not engage in protected activity under Title VII by making complaints about business decisions, even if those decisions are unlawful. *See* 42 U.S.C. § 2000e-2(a) (addressing employer practices); *see, e.g.*, *Dorn-Kerri v. Sw. Cancer Care*, 385 Fed. Appx. 643, 644 (9th Cir. 2010) ("Summary judgment was proper on the Title VII retaliation claim regarding alleged unlawful billing practices because Title VII does not cover billing practices."). Plaintiff's written complaint submitted to Human Resources documented his overall dissatisfaction with patrol efforts on the Fremont Street Experience. (Email with Attachment Printed at 2, Ex. A to Reply, ECF No. 39-2). Plaintiff's complaint documenting his dissatisfaction with patrol efforts and Defendant's decision to not conduct certain investigations regarding patrol does not qualify as a protected activity under Title VII. *See* 42 U.S.C. § 2000e–2(a). But Human Resources Manager Hunt further documented that Plaintiff verbally documented three issues of alleged gender and race discrimination to him. (Hunt Memo at 3, Ex. B to Reply, ECF No. 39-3). Those complaints regarding discriminatory treatment are protected conduct, *see Westendorf*, 712 F.3d at 422, and therefore satisfy the first prong of a Title VII retaliation claim. The fact that Plaintiff was terminated establishes the second prong.

Finally, the Court turns to the third prong: whether there was a causal connection between Plaintiff complaining of discriminatory treatment and his termination. Causation is a "but for" test that asks whether the retaliatory act would not have happened but for the plaintiff's protected activity. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002). Plaintiff must prove that, but for his allegations of discrimination, Defendant would

not have terminated him. But the record is devoid of any direct or circumstantial evidence that Defendant retaliated against Plaintiff for protected activity, *i.e.* his complaints of discrimination. Meanwhile, the memorandum written by Potts recommended terminating Plaintiff for "causing consternation in the organization, question[ing] [the organization's] vision, and question[ing] [the organization's] approach to enforcement on the tourist corridor versus parks." (Termination Recommendation at 1, Ex. 6 to Mot. Summ. J., ECF No. 23-6). Potts further recommended termination because Plaintiff called another lieutenant a liar during a staff meeting when the lieutenant was reporting about their patrol of the Fremont Street Experience. (*Id.*). Without any evidence to support a finding that Plaintiff's termination was caused by his protected behavior, rather than his complaint regarding dissatisfaction with patrol efforts and the lack of a corresponding investigation which is unprotected behavior, Plaintiff cannot establish the third element of his prima facie relation claim. Thus, this claim cannot succeed, and summary judgment is GRANTED to Defendant on Plaintiff's retaliation claim.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 30), is **GRANTED.**

The Clerk of Court is kindly directed to enter judgment in favor of Defendant and close the case.

**DATED** this __24__ day of September, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court